Myrtle M. GILLIAM, Plaintiff,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 67–785.

United States District Court
D. South Carolina,
Greenwood Division.

May 22, 1968.

W. H. Nicholson, Jr., of Nicholson & Nicholson, Greenwood, S. C., for plaintiff.

Klyde Robinson, U. S. Atty., Columbia, S. C., and Thomas F. Batson, Asst. U. S. Atty., Greenville, S. C., for defendant.

HEMPHILL, District Judge.

■ This is an action to review a "final decision" of the defendant, Secretary of Health, Education and Welfare; denying the plaintiff's application for a period of disability and disability benefits. Judicial review in the form of a civil action is authorized by Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), which provides scope and limits of this action. If the decision of the Secretary is based on substantial evidence, it must be affirmed and this court, on review, is limited by the record. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

The claimant filed her initial application for disability benefits and a period of disability on February 23, 1965 alleging that she had become disabled on November 15, 1964 due to high blood pressure and arthritis. This application was denied on May 25, 1965 and the plaintiff failed to seek reconsideration. No further action was taken until the plaintiff filed a second application on February 9, 1967 for a period of disability and disability benefits alleging that she had

become disabled in October of 1958 due to a heart condition, arthritis and neuritis. This application was denied initially and on reconsideration. A hearing was requested and subsequently held on September 7, 1967. The decision of the hearing examiner was rendered on September 29, 1967 denying the claimant disability or disability benefits. The hearing examiner found that (1) the claimant was a female with a third grade education who alleges inability to engage in substantial gainful employment since 1958 at which time she was 47 years of age, (2) she last met the special earnings requirements on March 31, 1962, (3) she was not precluded from engaging in her usual work at anytime during which she met the earnings requirements. The Appeals Council, upon request for review, affirmed on November 3, 1967 the decision of the hearing examiner. This action made the decision of the Secretary a final one.

■ Plaintiff has the burden of proving that she was disabled on or before March 31, 1962 in order to establish a period of disability under Section 216 (i) of the Social Security Act, 42 U.S. C.A. § 416(i), and to establish entitlement to monthly insurance benefits under Section 223(i), 42 U.S.C.A. § 423(i).

The plaintiff was born on March 23, 1911. She has only a third grade education but she is able to read and write "enough to get by with." It is claimed by her that she has worked as a spinner since the age of 13. However, her work record shows that she has earnings only from 1951 to 1958 but it also shows that she began to do lighter work some three years prior to her alleged disability.

Ordinarily, in Social Security litigation such as this, the court's attention is turned only to the issue of whether or not the Secretary's decision is based on substantial evidence. However, in the instant case the Secretary has raised the issue of *res judicata* based on the fact that the plaintiff had previously filed an application alleging disability but failed to ask for reconsideration when

the initial application was subsequently denied. Therefore, at the threshold, the court must determine at what stage in the appeals procedure in a Social Security case does *res judicata* attach.

In Farley v. Gardner, 276 F.Supp. 270 at 272 (S.D.W.Va.1967) the court stated that "[t]he general rule of *res judicata* as developed by the courts provides that a final judgment on the merits of a claim or cause of action entered by a court of competent jurisdiction is conclusive of the rights, questions and facts in issue as to the parties to the suit and their privies. 'The judgment puts an end to the cause of action which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.' Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948).

While the status of the doctrine of *res judicata* and its application to administrative decisions is quite unsettled, Farley, supra, the regulations established by the Secretary in regard to *res judicata* are found in 20 C.F.R. § 404.937 and state the following:

> The hearing examiner may, on his own motion dismiss a hearing request, either entirely or as to any stated issue, under any of the following circumstances:
>
> (a) *Res Judicata.* Where there has been a previous determination or decision by the Secretary with respect to the rights of the same party on the same facts pertinent to the same issue or issues which has become final either by judicial affirmance or, without judicial consideration, upon the claimant's failure to request reconsideration, hearing, or review, or to commence a civil action with respect to such determination or decision.

In the leading case of Hobby v. Hodges, 215 F.2d 754 (10th Cir. 1954) the factual situation present before the court was a situation where the claimant had received a hearing, the benefits denied and the Appeals Council affirmed the hearing examiner. No appeal was taken to the district court. Some time later a second application was filed and denied. A second hearing was denied. In regard to the issue of *res judicata* the court stated the following:

> The courts have not established a clear rule as to when the findings and decision of an administrative body are res judicata in subsequent proceedings. 42 Am.Jur., Public Administrative Law, Sec. 155, 161. It appears to us, however, that in this case the answer is found in the Social Security Act itself. When a claimant makes an application, the Act provides a detailed and comprehensive procedure for determining the benefits due. It was the evident purpose of Congress that this determination was to be the function of the Secretary and not the courts. As we have heretofore pointed out, a dissatisfied applicant may obtain a hearing which is in the nature of a judicial proceeding requiring the taking of evidence, findings of fact and a decision. After a final decision following a hearing, any individual who was a party to that hearing may obtain a review of such decision by civil action brought in the proper United States District Court, but that action may be brought only within sixty days after the mailing to the party of the notice of such decision. Upon review, the court has the power to affirm, modify, or reverse the decision. The findings of the Board as to any fact, if supported by substantial evidence, are conclusive upon the court and are not otherwise subject to review. The findings and decision therefore may become final either by lapse of time or court approval. Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 54, 68 S.Ct. 822, 92 L.Ed. 1196. To permit the applicant to relitigate a claim after failure to obtain a court review within the statu-

tory time would run counter to the apparent purposes and provisions of the Act. Thompson v. Social Security Board, 81 U.S.App.D.C. 27, 154 F.2d 204; United States v. LaLone, 9 Cir., 152 F.2d 43; Social Security Board v. Warren, 8 Cir., 142 F.2d 974; Walker v. Altmeyer, 2 Cir., 137 F.2d 531; Cf. South v. Railroad Retirement Board, 5 Cir., 131 F.2d 748; United States v. Willard Tablet Co., 7 Cir., 141 F.2d 141, 152 A.L.R. 1194. If the applicant in this case is permitted to have his claim relitigated, as he has sought to do, there would be no end to the controversy, and the provision in the statute which requires an action to be brought within sixty days after notice of a decision would become meaningless.

*Hobby,* supra, at 759.

In a recent Fourth Circuit case of James v. Gardner, 384 F.2d 784, 786 (1967) the court, faced with a situation of a claimant who had litigated his claim all the way through the district court level and who had appealed a second time to the district court, stated that:

> Ordinarily a final determination by the Secretary that the physical and mental impairments claimed in 1960 were not sufficiently severe to constitute 'disability' was, as the trial examiner and the district judge both decided, res judicata of the 1965 claim. Hobby v. Hodges, 215 F.2d 754 (10 Cir. 1954); Phillip v. Ribicoff, 211 F. Supp. 510 (E.D.Pa.1962), aff'd sub nom., Phillip v. Celebrezze, 319 F.2d 530 (3 Cir. 1963); Moore v. Celebrezze, 252 F.Supp. 593 (E.D.Pa. 1966). Certainly, the district judge's affirmance of the Secretary's denial of the 1960 claim was res judicata of a reapplication in 1965 based upon facts and matters theretofore litigated.

Several courts have held that failure to appeal within the 60 days to the district court as provided for under 205(g) of the Social Security Act (42 U.S.C.A. § 405(g)) will preclude a claimant from filing a reapplication because of the mandate of the statute. Saxon v. Celebrezze, 241 F.Supp. 152 (W.D.S.C.1965). The same result has been reached in several cases where the claimant has had the advantage of hearing but failed to take any procedural steps after the decision of the hearing examiner. This would be *res judicata* unless new medical evidence were presented. Moore v. Celebrezze, 252 F.Supp. 593 (E.D.Pa.1966); Phillip v. Ribicoff, 211 F.Supp. 510 (E. D.Pa.1962); Kindig v. Ribicoff, 202 F.Supp. 198 (E.D.Va.1962); Boles v. Celebrezze, 210 F.Supp. 856 (W.D.Va. 1962); *Saxon,* supra.

It is inescapable that none of these cases are factually applicable to the present question because in this case the claimant did not reach the hearing stage. The claimant in this case did nothing initially but file her application. In the case of Salyers v. Celebrezze, 214 F.Supp. 834 (W.D.Va.1962) the court held that *res judicata* attached when the claimant sought reconsideration of the initial application but did nothing further.

■ This court, however, does not feel, in the face of the *Salyers,* supra, and the Regulations established by the Secretary, that *res judicata* will attach until the claimant has gone through the hearing stage for it is at this time that the claimant can produce evidence, either in the form of documents or testimony. It is also at this stage that the proceedings take the form of litigation, that the claimant is likely to be represented by counsel, and that a decision on the merits is reached. The average claimant in a social security case has limited education and it is unimaginable that Congress, in enacting benevolent legislation, intended to deny a claimant benefits under the Act simply because the claimant failed to follow up his initial application. It would not be difficult to imagine situations where an individual with a third grade education filed an initial application without the aid of counsel, had this denied and not even

know that a right of appeal existed or if told by way of letter not be able to understand the consequences of failing to act.

The true impact of the *Hobby,* supra, seems to sustain the position that the process must go through at least the hearing stage. This is the only step which is in the nature of a judicial proceeding which would require a taking of evidence, finding of fact and decision based thereon. The findings and decision of the hearing examiner become final either by lapse of time or court review.

The hearing stage is the administrative phase that litigation is anticipated. Therefore, since the doctrine of *res judicata* seeks to avoid relitigation between the same parties and the same issues, it is only reasonable that it should not attach until there has been a hearing.

It is not necessary for the court to now determine whether or not the facts presented in the initial application are the same as those presented in the second application because the plaintiff never reached the hearing stage with her first application. There is, therefore, no issue of *res judicata* for this court to determine.

A review of the medical evidence reveals that the claimant first encountered medical difficulty in 1957 when she underwent surgery for certain female disorders. These operations were performed by Dr. D. O. Rhame.[1] While he stated that she had had a normal recovery, he further related that she could do no heavy work and was advised to do light work only.

Dr. George Blalock,[2] the claimant's family physician, in a report dated March 16, 1965, stated that the claimant had been unable to work since 1957. His diagnosis was hypertension, arthritis, obesity, and menopause. Her condition was described as indefinitely progressive and he prescribed rest.

In another report submitted February 4, 1967, which resulted from hospitalization, Dr. Blalock's final diagnosis was osteoarthritis and hypercholesteremia of moderate degree. The secondary diagnosis was anxiety state and menopause. An electrocardiogram performed by Dr. William Schulze[3] was negative.

In a radiologist report, Dr. P. W. Fant[4] found the lungs to be clear and the heart was not found to be enlarged. Hypertrophic lipping was found along the antero-dorsal vertebra end-plates. His impression was hypertrophic osteoarthritis of the dorsal spine. No gall bladder difficulty was found.

In a report dated March 13, 1967, Dr. Blalock related that the patient was permanently and totally disabled and filled in 1962 as the date the impairment prevented work. His final diagnosis was (1) chest pain suggestive of anginal syndrome (2) menopause (3) obesity (4) hypertension (5) severe anxiety state due to chest pain and menopause.

The Secretary seeks to rely on report given by Dr. Joseph A. Tobin[5] taken from a telephone conversation with Dr. Blalock. The summary of the conversation between the doctors as taken down by Dr. Tobin is as follows: "In summary, he stated that there was very little significantly wrong with her in 1962 but since that time she has developed the complaints as listed, arthritis, some aggravation of her essential or emotional hypertension and progressive obese state."

1. Dr. Rhame is a 1930 graduate of Columbia University College of Physicians and Surgeons with a specialty in General Surgery. He is certified by the National Board of Medical Examiners.

2. Dr. Blalock is a 1930 graduate of Columbia University, College of Physicians and Surgeons with a sub-specialty in General Surgery. He is certified by the National Board of Medical Examiners.

3. Dr. Schulze—no qualifications found in the record.

4. Dr. Fant—no qualifications found in the record.

5. Dr. Tobin—no qualifications found in the record.

The subjective testimony of the claimant is to the effect that "female trouble", high blood pressure and arthritis in her back and shoulders were the main causes of difficulty prior to and during 1962. She stated that she attempted to work after her female operation in 1957 but that she simply could not handle her job; this continued for some two years until she finally quit.

She stated that her family had a history of heart disease and that she had lost two brothers and two sisters as a result of heart trouble. She further related that Dr. Blalock told her, in 1957, not to work any more.

The claimant's husband testified that his wife could do very little work around the house and that she had nervous spells that required her to go to bed. He further related that this condition had existed for some four or five years. Mrs. Nix, a practical nurse and neighbor stated that she visited the claimant every day and that her condition had deteriorated considerably since her "female operation." She further related that she helped the claimant when she had her nervous spells. The spells occurred when her heart beat real fast causing her to become extremely nervous.

■ There are four elements to be considered in determining an individual's ability or inability to engage in substantial gainful employment. These elements are (1) the objective medical facts, which are the clinical findings of the treating or examining physicians; (2) the diagnosis, and expert medical opinions of the treating and examining physicians on subsidiary questions of fact; (3) the subjective evidence of pain and disability testified to by the individual and corroborated by others; (4) the individual's background, work history and age. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

■ The medical conditions of the claimant must be considered in combination and cannot be fragmentized when being evaluated in their effects on the claimant. Underwood, supra.

The record shows that three years prior to the claimant's surgery she had been employed as a cleanup hand. This required her to fill up a buggy with two pound rollers. This buggy, when filled, was pushed by the claimant about a hundred feet where the rollers were placed on a cleaning machine. This work required continuous bending, standing and walking, but is not considered to be strenuous. It cannot be said that the claimant is a malingerer. The substantive evidence illustrates that she tried to return to work but was unable to perform her duties to the satisfaction of her employer. This testimony is corroborated by the claimant's work report which reveals that she lost 126 days in 1956 due to personal illness and 14 days in 1957. Her job was terminated in February 1957. The claimant cannot be blamed if she tried to continue her occupation but was simply unable to fulfill her occupational requirements. On the other hand, an employer cannot be required to give continued employment to one who is unable to meet productive standards and who, from an employment standpoint, is a risk physically.

■ It is obvious from the record, applying the test directed by Underwood, supra, that the claimant cannot continue her former occupation in the spinning department. It is further conclusive that she has no specialized trade, skill or occupational training except for that she is now no longer able to perform. She has only a third grade education. The record is void of evidence revealing any residual work capacity. The claimant clearly cannot do heavy work, this is uncontradicted. She has no training to do light work and her educational limitation would prevent her from being successfully placed in the labor market.

In Thomas v. Celebrezze, 331 F.2d 541 (1964) the factual situation was virtually the same as the one presented

here. The claimant worked from age 14 and continued some 35 years. She had a second grade education and had never received any vocational training. Her only work experience was in the weaving room of a textile mill. In 1959 she had her breast removed which resulted in pain when she used her arms. The Secretary found that if she could not return to her former work, which was the only work that she had ever done, there were other jobs that she might perform. In answer to this the court said:

> It is the duty of the Secretary to protect the public funds from malingerers; but where, as here, the possibilities of obtaining employment are practically nil, it is no answer that the claimant may be theoretically capable of performing some one of the "non-physical, observational" jobs contained in an exhaustive list covering places and circumstances utterly irrelevant to her situation. Employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs. It is unrealistic to think that they would hire anyone with the impairments of this claimant.

*Thomas,* supra, at 546.

While the Secretary, in this case, did not attempt to place the claimant in other areas of the labor market, the court is in no other way able to distinguish this case from the *Thomas* case.

This court therefore finds that the claimant is unable to engage in substantial gainful employment due to medically determinable combination of impairments when these combinations of impairments are applied to this particular claimant and her individual background, work history, and age.

The decision of the Secretary is not supported by substantial evidence. The Clerk will enter judgment for the plaintiff.

And it is so ordered.