**Clyde D. TINSLEY, Plaintiff,**

v.

**Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 68–1059.**

United States District Court
D. South Carolina,
Greenville Division.

May 26, 1969.

248

Willie T. Smith, Jr., Greenville, S. C., Legal Services Agency of Greenville County, Inc., for plaintiff.

Thomas F. Batson, Asst. U. S. Atty., Greenville, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

This is an action to review the final decision of the Secretary of Health, Edu-

cation and Welfare, denying plaintiff's application for the establishment of a period of disability and disability benefits as authorized by Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), which provides jurisdiction and limits the scope of this action:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party * * may obtain a review of such decision by civil action * * *. Such action shall be brought in the district court of the United States * * *. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantive evidence, shall be conclusive * * *.

■ Accordingly, the sole question before the court is whether the Secretary's decision is supported by substantial evidence. If so supported it must be affirmed. This court has no authority to try the case *de novo*. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

■ Establishment of a disability which would entitle one to benefits under the Act is a two-step process. First, there must be a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months; and, second, there must be a factual determination that the impairment renders claimant unable to engage in any substantial gainful employment. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

In Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962), certain elements were enumerated which must be considered in determining a particular claimant's ability to engage in substantial gainful activity. These are: "(1) the objective medical facts, which are the clinical findings of treating or examining physicians divorced from their expert judgments or opinion as to the significance of these clinical findings, (2) the diagnoses and expert medical opinions of the treating and examining physicians on subsidiary questions of fact, (3) the subjective evidence of pain and disability testified to by Claimant, and corroborated by his wife and his neighbors, (4) Claimant's educational background, work history, and present age."

Plaintiff was born in 1916 in Flat Rock, North Carolina. He completed the fourth grade in school. He says that he can read and write, but is "slow at it." He has engaged in manual labor all his life. Beginning at age 15 and for 12 years thereafter he carried out waste in the card room of a textile mill. Plaintiff was next in the Army for about a year and was discharged due to asthma. Upon discharge he was given a 10-percent service-connected disability rating. Plaintiff now rates a 30-percent disability due to this condition. After his military service plaintiff worked in a textile mill weaving room. This job required that plaintiff walk around a great deal and move rather rapidly. He testified that he was assigned to about 100 looms which "covered about an acre." Since 1961 he has been repeatedly hospitalized with complaints, among other things, of asthma, and since 1961 has not worked steadily. During 1966 he worked for several weeks in a weave room where he was responsible for about ten looms. This work proved too tiring and he was forced to quit. Plaintiff later worked for a short while in 1966 at carpentry but "gave out." He claims the sawdust aggravated his asthma. He has not worked since.

An examination of the medical records reveals the following:

Plaintiff was confined in the Veterans Administration Hospital in Columbia, S. C., during June and July of 1961. The report reveals that plaintiff was admitted for asthma, a service-connected disease of some sixteen years duration. The report there shows the plaintiff

was in the Veterans Administration Hospital in Oteen, N. C., earlier that year for the same disease. Since being discharged he had gotten along well until about two months prior to admission in Columbia. He began having asthma attacks which had become acute several days prior to admittance. Plaintiff also complained of low back pain. The clinical record states, "pulmonary tests revealed moderate reduction in pulmonary function." Plaintiff was discharged with the following diagnosis: Established clinical diagnoses. 1. Bronchial asthma, chronic—treated, improved; 2. lumbosacral pain, due to undetermined cause—treated improved.

In November of 1961 plaintiff was admitted to the Veterans Administration Hospital in Oteen, N. C., for asthma. The clinical record states that he was unable to keep any job over a few weeks at a time and that five or six weeks previously he had been working as a weaver in a cotton mill, but was unable to hold that job because of fatigue and increase in coughing and asthma. He was released from the Oteen Hospital with a diagnosis of: "1. Bronchial asthma—treated—improved; 2. Chronic bronchitis—treated—improved."

In September of 1962 plaintiff was hospitalized in the Veterans Administration Hospital in Columbia for twenty-eight days because of asthma. He was released with a diagnosis of: "1. Bronchial asthma—Treated. Improved; 2. Bronchitis, chronic—Treated. Improved."

Again in April of 1963 plaintiff was admitted to the Veterans Administration Hospital in Columbia complaining of asthma and arthritis of the shoulders. The report of that confinement says, "It was seen that his cough was quite severe; however, it was easily controlled with small amounts of hycoclan. * * *

It was noticed that during patient's stay in the hospital his chest was rarely ever completely clear and that usually wheezes and rhonchi were present. * * * On 5/17/63 it was felt that patient had reached his maximum hospital benefit. * * * " Plaintiff was released with a diagnosis of: "1. Bronchial asthma—Treated, improved; 2. Bronchitis, chronic—Treated, improved; 3. Osteoarthritis of shoulder joints—Treated, improved."

On January 27, 1967 plaintiff was examined by Dr. J. E. Crosland, M.D.[1] Dr. Crosland entered the following diagnoses: 1) Bronchial asthma; 2) hiatus hernia; 3) fractures (compression) of D. 8; 4) angina pectoris." Dr. Crosland also stated that plaintiff was totally disabled.

During February and March of 1967 plaintiff was in the Veterans Administration Hospital in Oteen. The diagnosis of that hospital was: "1. Asthma, bronchial; 2. Chronic bronchitis; 3. Hiatal hernia; 4. fracture, 8th dorsal vertabra recent." The report from that hospital states that plaintiff had done little work since 1965 except for several weeks during the summer of 1966 and that he complained of shortness of breath, dizziness and chronic cough. It was also noted that plaintiff sustained his back injury when he fell on January 2, 1967. During his stay at the Oteen Hospital, plaintiff was given a back brace and advised not to smoke.

On June 20, 1967 plaintiff was examined by Dr. Ralph E. Cox, his family physician[2]. Dr. Cox entered diagnosis of: "1) bronchial asthma; 2) emphysema; 3) compound fracture of D8; 4) hiatal hernia." Dr. Cox stated that plaintiff was totally disabled, noting that he had marked dyspnea (shortness of breath) at rest.

[1]. J. Edgar Crosland, M. D., Medical College of South Carolina, 1938, General Practice.

[2]. Dr. Ralph E. Cox's qualifications are: Medical College of South Carolina, 1963; General Practice; Member, American Medical Association.

On August 23, 1967, plaintiff was examined by Dr. Everette B. Poole[3]. His report indicates that plaintiff complained of asthma and asserted that dyspnea precluded his continuing work as a weaver. The doctor also noted that plaintiff had sustained a fracture of his T–8 vertebra, and estimated a 50-percent loss of motion of the lower thoracic spine in all directions. In summary Dr. Poole stated,

> * * * His ventilation function is only moderately impaired before bronchodilators and the latter improved his performance considerably. With more aggressive treatment for his asthma there is no reason to believe this improvement can't be sustained.
>
> There has been a compressed fracture of a thoracic vertebrae but improvement of the local symptoms can be expected to occur in the next six to twelve months.

On October 9, 1967, plaintiff was examined for the Veterans Administration. That report noted plaintiff's complaints as follows: "Pain with tightness in his chest, around his heart and extends down into right arm. Severe shortness of breath. Has cramping spells in his chest. Severe pain in area of 8th dorsal vertebrae. Pain with stiffness of lower spine, hips and legs. * * * Some coughing, which becomes severe at times. Has a drawing sensation of feet. Pain of feet. * * *" Dr. Corrigan also found that although there was some tenderness over the injured vertebrae, plaintiff could flex within about 12 inches of the floor. He further noted that plaintiff could not squat "because of pain in his back and that he had difficulty in toe and heel walking because of the hammertoe." He made diagnosis of: "1. Edentulous, 2. Bronchial asth-ma and chronic bronchitis; 3. Hiatal hernia, history; 4. Albuminura (kidney infection), cause undetermined; 5. Fracture, 8th dorsal vertebrae, history; 6. Hammertoes 2, 3 and 4 left."

A comprehensive examination was made by Dr. James D. Armistead[4] for the South Carolina Vocational Rehabilitation Department on March 5, 1968. Plaintiff told Dr. Armistead that he could walk one or two blocks before he has to rest; that he has to go upstairs slowly; that he smoked about one pack of cigarettes per day; that he coughs a great deal when he gets up in the morning and that his coughing causes him to gag and vomit and for this reason he puts off eating until about 11:00.

Dr. Armistead found that although there was an increased A P diameter of the chest, plaintiff did not have pain over the spine on pounding and that there was no sternal tenderness. After 40 trips over the Master's Stairs, about 160 steps, plaintiff was dyspneic, "but still able to carry on." A diagnosis was entered of: "1. Chronic bronchitis. He does not have clinically significant obstructive emphysema; 2. Doubt heart disease * * *; 3. Abnormal urinary sediment suggesting pyelonephritis; 4. Probable abstinence syndrome. * * *"

A pulmonary test was performed upon plaintiff at the Greenville General Hospital on March 5, 1968. That test indicated, "moderate obstructive ventilatory defect. No air trapping, no response to broncho-dilator therapy."

■ Plaintiff in the present case has clearly established a disability. The hearing examiner found that plaintiff had: "2. * * * some bronchial asthma and chronic bronchitis; 3. * * * some mild osteoarthritis of the shoulder joints; 4. * * * an hiatus hernia; 5. * * * an old compression fracture

---

3. Dr. Everette B. Poole's qualifications are: Vanderbilt University School of Medicine, 1931; Practice, Internal Medicine; Diplomate, American Board of Internal Medicine; Member, American College of Physicians, American Society of Internal Medicine.

4. Dr. James Armistead's qualifications are: Emory University School of Medicine, 1960; Internal Medicine; Member, American Medical Association.

of the D8 vertebrae." A finding of the above disabilities is clearly warranted by the medical evidence. The hearing examiner also acknowledged that plaintiff had cut the leader in his left hand. Plaintiff has met the first requirement of the process in establishing a disability. The pertinent question is whether his disabilities prevent him from engaging in substantial gainful activity within the meaning of the Social Security Act.

The hearing examiner found: "7. That at all times the claimant has retained the physical capacity to engage in light to moderate work and has retained the physical capacity to perform the job which he had performed for some years in the weaving room; 8. That at no time has the claimant had impairments, either singularly or in combination, of such severity that he has been prevented from performing all forms of substantial gainful activity for a period of not less than twelve months." For the purpose of this analysis, the hearing examiner has said two things. He found, first, claimant can perform the same work in the weaving room which he previously performed and, second, that claimant can do jobs which are characterized as light to moderate in nature; and for these reasons his disabilities do not prevent him from engaging in substantial gainful activity as defined under the Social Security Act. If either of these findings are supported by substantial evidence the decision of the hearing examiner must be affirmed.

The guidelines which govern this court's consideration of whether the evidence upon which the Secretary based his decision is "substantial" were articulately expressed by the Fourth Circuit Court of Appeals, speaking through Judge Sobeloff, in Thomas v. Celebrezze:

The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *. Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance. * * * The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. * * * If his findings are supported by substantial evidence, the courts are bound to accept them. * * * In short, the courts are not to try the case de novo. At the same time, they must not abdicate their traditional functions; they cannot escape their duty to scrutinize 'the record as a whole' to determine whether the conclusions reached are rational. * * * If they are, they must be upheld; but if, for example, reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are equally bound to decide against the Secretary. [Citations omitted.]

The record of the case at bar, when tested against the guidelines as set forth in Thomas v. Celebrezze, does not disclose 'substantial evidence' in support of the Secretary's findings.

■ The hearing examiner apparently relied upon the report of Dr. Poole to the exclusion of medical and other evidence, including the testimony of plaintiff, plaintiff's employment and medical history and the statement of Mrs. Bell Howard. Under the rule promulgated in Thomas v. Celebrezze, supra, the hearing examiner may not consider one portion of the record only. This court, upon review, is obliged to consider the entire record in order that it be assured the findings of the hearing examiner are rational. The rationality of his finding must therefore be measured against the entire record, and not merely a portion of it. Upon consideration of the whole record, this court is convinced that the Secretary's finding that plaintiff is able to engage in some form of substantial gainful activity within the meaning of the Social Security Administration is unsupported by substantial evidence.

The evidence clearly establishes at least three conditions which appear to be the major source of plaintiff's prob-

lems. These conditions are: asthma and bronchitis, conditions which are chronic and of long standing; a compressed fracture of one vertebra; a cut leader in the left-hand which prevents full use of the index finger. These conditions were also found to exist by the hearing examiner.

Plaintiff has had asthma and bronchitis for many years. He was discharged from the Army due to his asthmatic condition. At that time he received a 10-percent disability. Since 1961 plaintiff has been hospitalized often, and frequently for long periods of time as a result of asthma and bronchitis. It is therefore clear that plaintiff has consistently had trouble with asthma and bronchitis.

The examiner found that plaintiff's asthma responded to medication and could be expected to continue to improve under medication. This finding was based upon Dr. Poole's statement that plaintiff's asthma responded to medication and his opinion that it could be expected to continue to improve under aggressive treatment. A later report by Dr. Armistead indicates that plaintiff's asthma did not respond to medication. It is further noted that over the years plaintiff has had many asthma attacks. He would be admitted to the hospital, treated, and when he reached maximum hospital benefits, released.[5] Plaintiff's medical history and the medical reports overwhelmingly support the conclusion that plaintiff's asthmatic condition responds to medication, but that does not completely clear it up. Also, in spite of treatment, at times, and frequently, plaintiff's asthma worsens to the extent that he requires hospitalization. This disability is certainly entitled to some weight upon consideration of plaintiff's employment opportunities.

The record also shows that plaintiff sustained a compressed fracture of a vertebra in January of 1967. Dr. Poole's report of August 23, 1967 stated that the back injury placed a 50-percent limitation upon plaintiff's freedom of motion. Dr. Poole further stated that the symptoms of this injury should be expected to disappear in six to twelve months. Since plaintiff sustained his injury in January of 1967 and Dr. Poole made his report in August of that year, it is clear, that even under the most hopeful prognosis, plaintiff could not, with such a severe degree of limitation of motion, be expected to engage in any substantial gainful employment within the meaning of the Social Security Act. He was under a medically determinable physical impairment which rendered him unable to engage in any substantial gainful activity for a continuous period of more than twelve months and was therefore disabled under the Social Security Act. In fact, when examined by the Veterans Administration in December of 1967 plaintiff was still having pain and stiffness in his back. Plaintiff testified at the hearing (August 21, 1968) that his back continued to bother him. He asserted that even when he wore his back brace, the pain become so severe after four or five hours that he had to lie down. Nothing in the record indicates otherwise. It seems to this court that the hearing examiner discounted this back injury as a basis for disability upon Dr. Poole's opinion that the symptoms should disappear within six to twelve months. There is clinical proof and subjective evidence of a severe back ailment. This court finds the following language of Underwood v. Ribicoff, supra, particularly applicable.

* * * The Referee gave inadequate consideration to the possibility of severe orthopedic trouble. This is a physical defect which is notorious in medical circles for difficulty of clinical proof. There are objective findings in this record pointing to a severe back ailment. * * * The Referee gave inadequate consideration

5. See Tr. 51, Report of VA Hospital, Columbia, S. C., May 20, 1963. " * * * it was felt that patient had reached his maximum hospital benefit and as he was relatively asymptomatic he was accordingly discharged."

to the tie between these objective findings and the subjective evidence of severe radiating pains in the back and inability to withstand slight exertion because of them.

■ As noted in Page v. Celebrezze, 311 F.2d 757 (5th Cir. 1963), pain which results from a medically determinable physical impairment may render a person unable to engage in gainful employment.

Plaintiff also testified at the hearing that he cut a leader in his left hand which impaired the use of his left index finger. Even the hearing examiner conceded that plaintiff did "have some slight stiffness of the left index finger and that he is unable to extend or close the finger completely." This physical limitation standing alone would not constitute a disability. With the realization that plaintiff has been a manual laborer all his life, such limitation should be considered along with other physical limitations in determining whether there are in reality jobs available to plaintiff.

In addition to the conclusions discussed above, the Veterans Administration report of October 5, 1967, contains a diagnosis of "Hammer toes 2, 3, and 4, left." That report also states that plaintiff had trouble "in toe and heel walking because of the hammertoe." This would be another limitation of motion which would affect the employment opportunities of a manual laborer.

As well as the medical evidence above, there is "subjective evidence of pain and disability testified to by plaintiff and corroborated by his neighbors" which may be considered in determination of whether there is a disability. Underwood v. Ribicoff, supra. Plaintiff testified that his asthma, back and hand made it impossible for him to work. Plaintiff's contention is supported by the following statement by Mrs. Bell Howard, his sister, with whom he lives:

To Whom It May Concern:

June 20, 1967

Mr. Clyde D. Tinsley has been with us six years and is making his home with us. He has asthma, emphysema and has attacks at night and keeps us awake. He nearly smothering [sic] death. He has back injury. He can't walk far without giving out of breathe [sic] * * * He has to take heart medicine on [sic] the time.

/s/ Mrs. Bell Howard

■■ In his opinion the hearing examiner noted each of plaintiff's medical conditions and proceeded to dispose of it as a basis for disability benefits. What the hearing examiner failed to do was to consider the effect of these conditions *in combination* upon plaintiff's employment opportunities. The hearing examiner is not allowed to fragmentize plaintiff's medical conditions and consider each ailment in isolation. He must consider their cumulative effect upon the plaintiff. The ultimate consideration is whether an employer would, in reality, hire a person of plaintiff's age, education, skills and experience, considering all of the established medical conditions and their combined effect upon that person's ability to perform. Underwood v. Ribicoff, supra; Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968); Gilliam v. Gardner, 284 F.Supp. 529 (D.C.S.C. 1968).

■ When disability benefits are denied, it should appear from the record that there is employment available to persons with plaintiff's characteristics. The job opportunities must be actually, and not merely theoretically, available. Hanes v. Celebrezze, 337 F.2d 209 (4th Cir. 1964). It is highly improbable that an employer would hire someone of plaintiff's age, skills, education, work experience and medical conditions. Plaintiff's education is limited. His work experience is limited to manual labor in textile mills. Plaintiff's ability to perform manual labor is limited by his back injury, by his hand injury, by his asthma and resulting dyspnea, and by the condition of his feet. A person with such limitations of physical activity is highly unsuited for manual labor. In fact plaintiff testified that before he sustained his back injury, he applied for

a job in a textile mill in Greenville and was denied employment due to his physical condition.

It might be said that there are other jobs of a light or sedentary nature, or perhaps observational jobs, which plaintiff could perform. The hearing examiner found that plaintiff could perform light to moderate work. There was no showing of what other jobs plaintiff could perform and it seems highly unlikely that other employment opportunities actually exist for someone with plaintiff's characteristics. This court realizes that employers are reluctant to hire persons who will create insurance problems. They are unlikely to run the risk of increasing their workmen's compensation insurance costs. An employer would be even more unlikely to hire someone who is uninsurable, as this plaintiff might well be. Sayers v. Gardner, 380 F.2d 940 (6th Cir. 1967); Thomas v. Celebrezze, supra. The courts also are cognizant that employers are concerned with substantial capacity to perform and steady attendance. Thomas v. Celebrezze, supra. The record here clearly demonstrates that plaintiff has recurring attacks of asthma. Chronic absenteeism resulting from plaintiff's asthmatic condition would certainly affect his employment opportunities. The following language of pertinent application is found in Cooke v. Celebrezze, 365 F.2d 425 (4th Cir. 1966):

> It is a matter of common knowledge that employers are hesitant to hire the handicapped, particularly if they have no special skills. The prospective employer's fear of absenteeism, the possibility of higher workmen's compensation premiums, and uncertainty whether such an employee will be able to perform his work satisfactorily, are factors militating against the abstract judgment that jobs are available to this man. Quite correctly the District Court held that the government's evidence, viewed in light of the record as a whole, was insufficient to sustain the Secretary's finding.

Aside from all the above, the hearing examiner specifically found that plaintiff was able to perform the employment in which he had been engaged in the past. This finding is contrary to the overwhelming weight of the evidence and, indeed, is unsupported by any evidence whatsoever. It is the arbitrary and unsupported opinion of the hearing examiner. The evidence, medical and otherwise, indicates that plaintiff has asthma which results in shortness of breath upon exercise and sometimes even while at rest. Plaintiff's occupation ever since he was discharged from the Army has been in a weaving room. This job requires a great deal of moving around to tend the looms. As exertion brings on shortness of breath, plaintiff has been unable to perform this job since 1961.

His other physical limitations would also tend to prevent him from engaging in his former employment. His back pain prevents full freedom of movement. The condition of his feet also would preclude a great deal of walking or moving around. Since part of his job in the weave room consists of tieing the ends of threads together, the limitation of use of his index finger as a result of the cut leader would further handicap the performance of his past occupation. In addition to these specific considerations, those factors which militate against his general employment opportunities [6] would also handicap his efforts to obtain employment in a weaving room.

When, as was so clearly done here, a plaintiff shows that he is disabled from engaging in his former occupation, the burden shifts to the Secretary of Health, Education and Welfare to come forward with a showing of other employment available to a person of plaintiff's age, education, work experience, skills, and physical limitations. Brandon v. Gardner, 377 F.2d 488 (4th

---

**6.** Absenteeism, adverse effect on employer insurance considerations. See page 254 above.

Cir. 1967); Boyd v. Gardner, 377 F.2d 718 (4th Cir. 1967). There is absolutely no evidence in the record showing what jobs are available to a person with plaintiff's characteristics. Therefore, the hearing examiner's finding that there is gainful employment available to plaintiff is unsupported by any evidence and cannot be affirmed.

It is clear, then, that the evidence in this record, when analyzed under the guidelines set down in Thomas v. Celebrezze, supra, reveals that plaintiff is disabled within the meaning of the Social Security Act. The record overwhelmingly supports the conclusion that plaintiff's disabilities preclude him from engaging in substantial gainful employment as defined under the Act and the hearing examiner's conclusions to the contrary are unsupported by substantial evidence.

The determination of the Secretary is overruled and the Clerk is directed to enter judgment for the plaintiff.

And it is so ordered.