**Charles O. SORENSON, Plaintiff-Appellee,**

**v.**

**Casper W. WEINBERGER, Secretary of Health, Education and Welfare, Defendant-Appellant.**

**No. 74–1279.**

United States Court of Appeals, Ninth Circuit.

March 28, 1975.

Eugene A. Lalonde, Asst. U. S. Atty., Billings, Mont., for defendant-appellant.

Jerome J. Cate, Billings, Mont., for plaintiff-appellee.

## OPINION

Before BARNES and CHOY, Circuit Judges, and EAST,* District Judge.

### PER CURIAM:

To understand this case, we conclude certain facts should be recited.

### I. FACTS.

Plaintiff-appellee, prior to July 5, 1968, had led an active life working at hard physical jobs, mostly on farms, (such as plowing, discing, and cultivating, or as a tractor operator). He studied welding and worked as a welder (heavy, light and spot), a pneumatic drill operator on a railroad; an auto mechanic and a service station attendant; a repairman in a mine as stationary engineer; and a swamper on oil rigs. He had spent three years in military service, where he had training as a heavy equipment operator, and as a paratrooper. At some undisclosed date, long prior to July 5, 1968, in a dynamite explosion, he had lost portions of two fingers and a portion of the thumb on his left hand. This apparently had not incapacitated him for heavy work.

On July 5, 1968, plaintiff fell from an oil rig and injured his left ankle. He was hospitalized two days and had a short cast placed on his left leg. He lost his job. He was unable to work until September 13, 1968, when he was employed by Great Western Sugar Company, repairing broken machinery for six months. He then sought work as a bench welder, where he could be off his feet.

During this time he was receiving Montana Workmen's Compensation benefits of $50.00 a month, payable for five years, unless released by his doctor for work. Because plaintiff was not released by his doctor to seek employment, no other employer in Montana carrying that state's Workmen's Compensation Insurance would hire plaintiff.

On March 4, 1969, due to continued pain and swelling from the left ankle to the left calf, plaintiff's doctors performed an arthrotomy on his left ankle, removing two loose calcium deposits, one from the joint space.

On May 14, 1969, plaintiff filed an application for Disability Insurance Benefits due him under Title II of the Social Security Act, with the Department of Health, Education and Welfare (hereinafter sometimes HEW).

On July 15, 1969, the Bureau of Disability Insurance of the Department of Health, Education and Welfare advised plaintiff he was not entitled to disability insurance, because "you did not meet the disability requirement of the law," and "your disability did not last for a continuous period of at least 12 months." (Ex. 3, page 1; and Hearing Officer's Transcript, page 83, [hereinafter Vol. I, II, or III].)

On July 31, 1969, plaintiff filed a request for reconsideration with HEW, which was on September 8, 1969, denied (Ex. 15, Vol. I, pages 85 and 111 et seq.) upon the same grounds as previously stated (Vol. I, page 116).

In the denial of reconsideration, this statement appears:

"We recognize that you may not be able to engage in work requiring prolonged walking or standing. However, the evidence shows you retain the capacity to engage in other types of work in keeping with your training and experience." (Vol. I, page 116).

Advised of his right to request a hearing, the plaintiff made a timely request for a hearing on October 2, 1969.

On October 13, 1969, plaintiff started vocational rehabilitation classes, seeking to finish his high school education. He drove an auto to class, but long driving tired him. He later passed the entrance exams for North Dakota State University.

On January 23, 1970, a hearing was had before a Hearing Examiner, where

---

* The Honorable William G. East, Senior District Judge of Oregon, sitting be designation.

plaintiff was represented by his attorney, who introduced medical evidence and thereafter, a seven-page written statement on plaintiff's behalf. Two government doctors examined plaintiff, and filed a three-page report concluding that "The total evidence fails to show that plaintiff had a medical impairment of sufficient severity to preclude him from *all* work activity for a continuous period of one year." (Ex. 15, page 2). (Emphasis added).

On June 12, 1970, the Appeals Council notified plaintiff that it had concluded the decision of the original Hearing Examiner was correct; that that was the Secretary's final decision; and that any further remedy lay with the district court.

On July 29, 1970, the plaintiff filed suit against the then Secretary of Health, Education and Welfare.[1]

Defendant moved for a summary judgment and plaintiff moved to remand the matter to the Secretary for the taking of additional evidence. This latter motion was granted February 1, 1971. A supplemental hearing was had on April 20, 1971, before a different hearing examiner.[2] We need not here repeat in detail the additional testimony presented, both by plaintiff and the three additional reports of his doctors (See Vol. II). Represented by his attorney, plaintiff testified to pain in the back commencing in June 1970, diagnosed as a "chronic lumbosacal pain, and a possible herniated disc."

Plaintiff testified he had been attending college as a freshman in a State Vocational Rehabilitation Program, studying to be a school teacher, with six to seven hours of classes per day. For his pain he took four Darvon tablets in "9 months to a year's time," which stopped the pain. (Vol. II, pages 166–67.)

The Government called as a witness an allegedly impartial vocation expert, a Dr. Kenneth B. Card.[3]

The Examiner conceded that plaintiff could not do heavy work, but enquired of Dr. Card if plaintiff had the residual functional ability to perform work involving light and sedentary exertion; "sedentary" being work in which plaintiff would not be required to lift more than 10 pounds, with more time sitting than standing or walking; and "light" work being where plaintiff might be required to lift 20 pounds maximum, and would involve some walking or standing.

Dr. Card concluded plaintiff could dispatch maintenance vehicles, maintenance personnel, or maintenance service, or work as a parking lot attendant, or as a dispatcher for taxi cabs; or any attendant jobs, such as maintenance and repairman in schools (as for example) for heating plants—or operating or repairing vending machines or repairing welding equipment, or limited bench work in welding small articles, but could do no heavy maintenance jobs. Dr. Card testified such jobs exist both nationally and locally.

On May 7, 1971, the Hearing Examiner made his findings (only 9 to 13 relate to the problem before us)[4] and held that

---

1. Plaintiff therein alleged he could not "engage in any substantial gainful activity by reason of a medically determinable physical impairment which lasted for a continuous period of not less than twelve months." (Paragraph X, Complaint (C.T. 3)).

2. The first hearing examiner was Harvey Schwartz. The second hearing examiner was Fred L. Woodlock.

3. Plaintiff's counsel stipulated to Dr. Card's qualifications; and they appear in the Record.

No such expert testimony was offered on behalf of plaintiff.

4. 9. The claimant has the residual functional capacity to perform work of a light and sedentary nature, and cannot return to his former work involving heavy physical exertion.
10. Claimant can, in the light of his residual capacity, age, education, experience and training, work as a parking lot attendant, as a dispatcher of taxis or other mechanical or maintenance vehicles, and perform bench

plaintiff did not qualify for Disability Insurance Benefits. The Appeals Council[5] on June 22, 1971, adopted the Hearing Examiner's Findings and Conclusions.

On July 23, 1971, plaintiff had a laminectomy spinal fusion in his back above the sacrum, and a reoperation in the same area on August 20, 1971.

On September 8, 1971, the Appeals Council considered the plaintiff's most recent surgery as reported by plaintiff's doctors, but concluded that although plaintiff would have a period of convalescence and inability to work during the days following his back surgery, it did not appear that this impairment would preclude all work activity for at least 12 months after July 23, 1971, and therefor did not place such material in the record.

On October 4, 1971, the district court ordered the matter submitted on briefs and the record. Plaintiff then filed a motion for summary judgment, and defendant renewed his motion for a summary judgment.

On February 9, 1972, the district court ordered a further remand to HEW, so that the plaintiff's additional medical evidence of the July 23, 1971, operation could be placed in the record, or so that a further hearing could be had. By stipulation, a further hearing was had. Plaintiff's own affidavit and his doctor's medical reports were filed, and two specialists testified for the Government (Ex. AC–4 and AC–6, Vol. III), one an orthopedist and one an internist.

On February 21, 1973, the Appeals Council of the Bureau of Hearing and Appeals of HEW refused to change its earlier conclusion that plaintiff did not qualify for disability benefits, stating:

"The internal medicine and orthopedic consultative examinations more than adequately establish that there is no medical problem other than the residuals from the fracture of the left ankle and the spinal fusion. In particular, there is no impairment of the cardiovascular, gastrointestinal or genitourinary system. There is no conflict between the clinical medical findings of the claimant's treating physician and the reported results of the consultive examinations. These medical sources indicate that the limitations imposed on the claimant are due solely to his ankle and back problems and in no way preclude him from engaging in sedentary and light physical activity." (Vol. III, page 212.)

Back in the district court, the government attorney, on May 4, 1973, renewed his motion for summary judgment and filed a brief in support of his pending motion for summary judgment.

On August 31, 1973, the district court made an order granting summary judgment to defendant, and ordering judgment entered for defendant HEW. (C.T. 106).

The court correctly stated the questions before him—whether the findings and conclusions of the hearing examiners and the Appeal Board (1) are supported by substantial evidence, and (2) defining the disability here involved (C.T. 107). The court then listed the various sedentary occupations at which plaintiff could work. The court then stated that plaintiff had listed four objections to such jobs; that there was no merit in any of

work utilizing his skill as a spot and light welder.

11. Jobs in the work activities listed in the foregoing paragraph are available in the national economy in significant numbers.

12. The evidence fails to establish that the claimant's impairments prevented him from engaging in any substantial gainful activity for any continuous period beginning on or before the date of this decision which has lasted or can be expected to last at least twelve months.

13. The claimant was not under a "disability" as defined in the Social Security Act, as amended, at any time prior to the date of this decision. (Vol. II, pages 136 and 137 of Findings.)

5. The two Appeals Council members acting were John T. Allen and Herman Elegant. The two previous Appeals Council members were Lucille V. Covey and John T. Allen.

these four objections (C.T. pages 109–110).

The trial court then concluded that these sedentary jobs were available to plaintiff, and their availability was based on substantial evidence. The trial court then defined that term:

. "Substantial evidence has been defined as 'such relevant evidence as a . reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole.' In further explanation of this concept, the courts have said:

'If there is only a slight preponderance of the evidence on one side or the other, the Secretary's finding should be affirmed.'

Branch v. Finch, 313 F.Supp. 337 at 341 (1970)." (C.T. 111).

Counsel for plaintiff then moved to alter and amend the court's judgment "upon the ground the interests of justice so require." Briefs were filed on both sides—and by an opinion and order, filed November 13, 1973 (C.T. pp. 133–136) the trial judge reversed his August 31, 1973 Order, granting plaintiff's motion for summary judgment, rather than defendant's.

In so doing, the district court relied on three grounds stated to exist, upon which to base his changed position.

*First*: The Hearing Examiner determined plaintiff could follow three occupations: Parking lot attendant, bench welder, and vehicle dispatcher. In considering these, the district court concluded that "even the most healthy would find these jobs tedious and uncomfortable," "particularly painful," and that "where most tasks which claimant does can only be done with great pain, this constitutes 'disability' within this section." The sole case cited by the district court in support of this interpretation of what constitutes disability is Haskins v. Finch, 307 F.Supp. 1272, 1282 n.6 (W.D. Missouri 1969).

*Second*: The district court stated "the ultimate consideration is whether an employer would, in reality, hire a person of plaintiff's age, education, skills and experience, considering all the established medical conditions and their combined effect upon that person's ability to perform," citing but one case, Tinsley v. Finch, 300 F.Supp. 247, 254 (D.So.Carolina 1969).

The district court continuing states:

"In the instant case, the plaintiff has offered evidence showing the nonavailability of job opportunities when he testified that the employers he had approached told him not to come back until his doctor released him for work. The fact that the plaintiff has not been released by medical doctors to return to work is contained within the record." (C.T. 134–35).

*Third*: The statute should be liberally construed to include rather than exclude claimants, citing two district court cases—White v. Finch, 311 F.Supp. 307, 311 (S.Mass.1970); Smith v. Celebrezze, 239 F.Supp. 337, 340 (W.D.So.Carolina 1965); and Davidson v. Gardner, 370 F.2d 803, 808 (6th Cir. 1966).

We cannot agree that all or any of the district court's three grounds justify his final conclusion to reverse.

## II. THE LAW—DEFINITION OF DISABILITY.

■ That a job is found to be tedious or uncomfortable cannot constitute substantial evidence that a person is disabled from doing *any* work. If this were the law, the Social Security Act would become an unemployment compensation act.

The Congress "in its wisdom" has seen fit to define the word disability, as it appears in the Act.

"[It] defines 'disability' (except for certain cases of blindness) as the 'inability to engage in any substantial gainful activity by reason of any medically de-

terminable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'

"Section 223(d)(2)(A) further provides that 'an individual . . . shall be determined to be under a disability *only* if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage *in any other kind of substantial gainful work* which exists in the national economy, *regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.* For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." (Vol. I, pp. 10–11). (Emphasis added).

The courts cannot rewrite the definition of disability laid down by Congress.

Not one word of evidence was produced by any witness on behalf of plaintiff that he was suffering such great pain that he would be prevented from engaging in *any* other kind of substantial gainful work. During much of the time plaintiff has been unemployed, he was regularly attending school at the university level, working six or seven hours a day in classes; studying at other times and driving his auto to school.

Further, there are Social Security Regulations which consider an applicant's subjective complaint of pain, and how such symptoms are to be judged:

"Statements of the applicant, including his own description of his impairment (symptoms) are, alone, insufficient to establish the presence of a physical or mental impairment." (Sec. 404.1501(c)—Definition of impairment; Reg. # 4, Sub-part P.)[6]

"In any such case it must be established that his physical or mental . . . impairments are of such severity, i. e., *result in such lack of ability to perform significant functions as moving about, handling objects, hearing, speaking, reasoning, and understanding,* that he is . . . unable to . . . engage in *any . . . substantial gainful work . . . .*" (Sec. 404.1502(b), Reg. 4, Sub-part P.)

■ Again, other than the fact plaintiff at times was using a cane in getting about, we do not find in the record, nor has plaintiff pointed out to us, any testimony produced that plaintiff in any way was unable to handle objects, or that his hearing, speaking, reasoning or understanding was in any degree influenced, or affected or had deteriorated.

All the cases cited by the district court,[7] save one,[8] applied the vocational criteria used by the courts *prior* to the Social Security Amendments of 1967. The old standards required a showing of available employment and *actual job opportunities.* Congress in 1967 substituted the "ability-availability" standard for a "hire-ability standard" which had emerged by case law.[9]

---

**6.** This restriction on subjective complaints of alleged sensory or motor disability specifically does not apply to blindness.

**7.** *I. e.,* Haskins v. Finch, 307 F.Supp. 1272 (W.D.Missouri 1969); Tinsley v. Finch, 300 F.Supp. 247 (D.So.Carolina 1969); Smith v. Celebrezze, 239 F.Supp. 337 (W.D.So.Carolina 1965); Davidson v. Gardner, 370 F.2d 803 (6th Cir. 1966).

**8.** *I. e.,* White v. Finch, 311 F.Supp. 307 (D.Mass.1970).

This Circuit has not followed the liberal interpretation rule. *See* cases, *post.*

**9.** "An individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any kind of substantial gainful work which exists in the national economy, *regardless of whether such*

This Circuit has recently referred to this change in Torske v. Richardson, 484 F.2d 59 (9th Cir. 1973):

"The statutory definition of 'disability' was specifically narrowed to correct court decisions that the Congress considered to be too liberal." (484 F.2d at 60).

And *see* Harmon v. Finch, 460 F.2d 1229 (9th Cir. 1972); Chavies v. Finch, 443 F.2d 356 (9th Cir. 1971); Waters v. Gardner, 452 F.2d 855 (9th Cir. 1971); Mandrell v. Weinberger, 511 F.2d 1102 (10th Cir. 1975).

■ Thus the fact that because plaintiff could obtain no work because his doctor had not ordered his release from disability is of no consequence. If it were, any doctor, by refusing to release a patient from disability status could override the intent of Congress.

As to the district court's third ground—a liberal interpretation should be followed—we are not convinced. The two district court cases cited, one from the Second Circuit and one from the Sixth, do not convince us we should overrule this Circuit's decisions—some of which are cited above. (*See particularly* Torske v. Richardson; *supra*.)

■ The findings of the Secretary of HEW are supported by substantial evidence,[10] and the decision of the district court is therefore:

Reversed.

*work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.* For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers whether in the region where such individual lives or in several regions of the country." (Emphasis added.) (Appellant's Brief at 5.)

The Congressional intent is clear. *See* Sen. Rep. 744, 90th Cong. 1st Sess. quoted in 2 U.S.Code and Cong. & Admin.News, p. 2834 at pp. 2880–2883 (1967).

10. It is a matter of law that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, . . . (42 U.S.C. § 405(g).

The substantial evidence test requires that the reviewing court determine that the Secretary's findings are supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required. It is immaterial that the evidence in a case would *permit* a different conclusion than that which the Secretary reached. If the Secretary's findings are supported by substantial evidence, the courts are required to accept them. It is the function of the Secretary, and not the court's to resolve conflicts in the evidence.

While the court may not try the case *de novo*, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the Secretary's conclusions are *rational*. If they are, as in the instant case, they must be upheld.