**William D. COX, Plaintiff,**

v.

**F. David MATHEWS, Secretary of Health, Education and Welfare, Defendant.**

**No. C–75–2466 WAI.**

United States District Court, N. D. California.

Sept. 3, 1976.

A. Keith Lesar, Watsonville, Cal., for plaintiff.

James L. Browning, Jr., U. S. Atty., Stephen A. Shefler, Asst. U. S. Atty., San Francisco, Cal., for defendant.

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

INGRAM, District Judge.

In August 1973, plaintiff William D. Cox, in the course of his employment as a carpenter, sustained a painful low back injury. He continued working until October 1973. In the months that followed, plaintiff received extensive medical treatment and physical therapy. In July 1974, he underwent an operation for this condition. He was discharged from the hospital ten days later and continued to make steady progress. As of October 1974, he complained of occasional sharp pain near the operative site and an achy, restless feeling below the waist. He was receiving physical therapy twice a week. Dr. Edward Froning, plaintiff's orthopedic surgeon, reported that Mr. Cox was still not ready for a release to do any kind of work. On February 10, 1975, Dr. Froning reported that he had examined Mr. Cox that day and found that it would be unrealistic to hope that he could ever return to work as a carpenter. He advised plaintiff to begin vocational rehabilitation.

Plaintiff first applied for Social Security benefits on December 28, 1973. His application was denied and he filed a request for reconsideration submitting more evidence in the form of medical reports. The Social Security Administration again denied plaintiff's claim and plaintiff requested a hearing. A hearing, *de novo,* took place before an Administrative Law Judge on February 12, 1975. Evidence included plaintiff's medical records, a letter from Dr. Froning dated February 10, 1975 and a handwritten

list outlining the history of plaintiff's medical treatment and care from the date of the injury through the date of the hearing. Testimony at the hearing was given by plaintiff and a vocational expert, Mr. Charles D. Edwards. The Administrative Law Judge decided that plaintiff was disabled from October 12, 1973 to February 10, 1975, but not thereafter. The Appeals Council, after receipt of additional evidence from plaintiff, approved this decision on September 25, 1975. Plaintiff, thereupon, brought this action pursuant to Section 205(g) of the Social Security Act, as amended 42 U.S.C. § 405(g), to obtain judicial review of the "final decision" of the Secretary of Health, Education and Welfare that plaintiff's disability terminated on February 10, 1975. He alleges that this determination is not supported by substantial evidence and that the Secretary was without authority to make such a determination because the procedures utilized denied plaintiff due process.

■ These issues are before this Court in the form of Motions for Summary Judgment brought both by plaintiff and defendant. The contention that plaintiff was denied due process needs to be decided before the Court can begin to review the decision of the Secretary determining eligibility. Plaintiff asserts that the Secretary erred by determining both eligibility for disability insurance benefits and the date of cessation of such benefits in a single hearing. Plaintiff cites no authority for this proposition. However, the Sixth Circuit, in a well-reasoned decision, *Myers v. Richardson,* 471 F.2d 1265 (6th Cir. 1972), did uphold this procedure. It is most reasonable to have a single hearing to decide the fact of disability, the extent of disability, the duration of disability, as well as to determine whether such disability has terminated. Multiple hearings would create a waste of time and effort. The single hearing held in this case adequately provided the plaintiff with an opportunity to be heard. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

■ Plaintiff further contends that even if the single hearing was permissible, the procedure followed in this case violates due process in that the notice of the hearing failed to warn plaintiff of this possibility. The notice received by plaintiff specified "Issues to be decided" which it listed as being: "(1) Whether you have the required insured status under the law; and if so, as of what dates; (2) The nature and extent of your impairments; (3) Whether your impairment has lasted or can be expected to last for a continuous period of at least 12 months, or can be expected to result in death; (4) Your ability to engage in substantial gainful activity since your impairment began; (5) When your disability, if any, began." Issue (4) on its face seems to state that the hearing is to cover the claimant's ability to work at all times since the onset of the disability continuing through to the time of the hearing. However, because disability ordinarily will be based on medical reports which cover the entire period in question, even if there is some latent ambiguity in this notice, usually it would not create any risk of error and thus it would not violate due process, since, as the Supreme Court stated in *Mathews v. Eldridge, supra* at 907, procedural due process rules are shaped by the risk inherent in the truthfinding process as applied to the generality of cases, not by the rare exceptions.

■ Having found that plaintiff was indeed afforded ample due process, it is necessary to review the Secretary's decision. Disability under 42 U.S.C. § 423(d)(2)(A) is limited to the circumstances where the claimant's impairments are of such severity that not only is he unable to do his previous work but, considering his age, education, and work experience, he cannot engage in any other kind of substantial gainful work which exists in the national economy. This decision is to be made without consideration of whether such work exists in the immediate area in which the applicant lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. *Sorenson v. Weinberger,* 514 F.2d 1112 (9th Cir. 1975). This "hire-ability" standard was

substituted by Congress in 1967 for the "ability-available" standard that had developed by case law which Congress considered to be too liberal. *Torske v. Richardson*, 484 F.2d 59 (9th Cir. 1973), *cert. denied* 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237. The concern underlying the 1967 amendment is that Congress does not want Social Security disability benefits to be a form of unemployment compensation. *Sorenson v. Weinberger, supra* at 1117.

Once an applicant has shown that the impairment is so severe that he is no longer able to perform the kind of work in which he has been engaged, the burden shifts to the Secretary to prove that there is some "substantial gainful employment" which claimant is able to perform. *Rosin v. Secretary of Health, Education and Welfare,* 379 F.2d 189 (9th Cir. 1967); *Stark v. Weinberger,* 497 F.2d 1092 (7th Cir. 1974). That is to say, the Secretary must show that the claimant has a residual capacity for work notwithstanding his impairment. *Trice v. Weinberger,* 392 F.Supp. 1193 (N.D. Ga.1975).

This Court cannot re-weigh the evidence as presented in the record. If there is "substantial evidence" in the record to support the conclusion that there is some substantial gainful employment which plaintiff is able to perform, the Secretary's decision must be affirmed even if there is conflicting evidence. *Torske v. Richardson,* 484 F.2d 59 (9th Cir. 1973), *cert. denied* 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237. Substantial evidence means " ' . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Cite omitted." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1970).

In this case, there is agreement that plaintiff was unable to work between October 12, 1973 and February 10, 1975. There is also no dispute that plaintiff cannot return to work as a carpenter. Plaintiff only protests the Secretary's decision that disability was terminated. However, the transcript of the administrative hearing shows that there was substantial evidence upon which the Administrative Law Judge could base his decision that plaintiff had the ability to perform light sedentary work after February 10, 1975.

1. Dr. Froning's office notes of February 10, 1975 show that while plaintiff has a constant dull low back pain and some sharp pain in his lower back, he is not preoccupied with his symptoms and the pain on the popliteal stretch of sciatic nerve found preoperatively is now gone. Plaintiff performs such activities as swimming and riding a stationary bicycle, but he is still limited to 30 minutes of sitting or standing. (Tr. 93).

2. Dr. Froning advised him that "he try to arrange with his gunsmith friend an actual trial working in this field" and that "begin vocational rehabilitation at once." (Tr. 93).

3. The vocational expert, Charles D. Edwards, testified that, based on consideration of his age, education, vocational background, and present physical and mental capabilities, as of February 10, 1975, plaintiff was able to perform certain types of full-time work not involving heavy lifting and that these jobs existed in the economy in substantial numbers. He testified that there are a number of entry-level jobs that one could pick up without advance training and without rehabilitation. (Tr. 33–34). Mr. Edwards listed such positions as assembly work, light truck driver, guard or watchman, and fork lift operator.

4. Mr. Edwards was directly questioned about these particular jobs in light of plaintiff's inability to stand or sit for long periods. He testified that "those jobs do include mixtures, not always at the worker's option but varied throughout the day." (Tr. 36).

5. The Administrative Law Judge specifically asked plaintiff, "Do you agree with your doctor when he says you are able to go out and do light work now?" Plaintiff responded, "I am willing to try it, yes. Whether I am going to be able I guess the future will tell that." (Tr. 39).

6. Plaintiff evinced an interest in being a gunsmith or locksmith (Tr. 26) and hoped

to receive rehabilitative training. (Tr. 27 & 39). He expressed concern for the low rate of pay in the recommended fields. (Tr. 38).

■ There is, indeed, contradictory evidence too. There is some evidence that Dr. Froning felt that plaintiff had not yet recovered enough to begin working. For example, in his letter of March 25, 1975 which was considered as part of plaintiff's administrative appeal in this matter, Dr. Froning noted that plaintiff planned to attempt vocational rehabilitation as a gunsmith and stated that "He has not recovered sufficiently as yet to initiate such an attempt but I have suggested that he might begin to try to do so at this time." (Tr. 94). However, release from the claimant's physician is not determinative of this matter. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 (9th Cir. 1975).

■ Also the record contains evidence that plaintiff still suffers pain (e. g. Tr. 29 & 93). While relatively constant severe pain may give rise to a disability, subjective symptoms of pain must be evaluated with due consideration for credibility, motivation and medical evidence of impairment. The fact that a person cannot work without some pain and discomfort does not satisfy the test for disability. *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971); *Adams v. Flemming*, 276 F.2d 901, 904 (2nd Cir. 1960); *Timmerman v. Weinberger*, 375 F.Supp. 641 (E.D.Mo.1974), aff'd, 510 F.2d 439 (8th Cir. 1975).

■ This Court finds that the record contains substantial evidence that plaintiff's disability terminated on February 10, 1975 and that while plaintiff was not able to return to his prior trade, he could engage in substantial gainful employment in fields characterized as light and sedentary labor.

Therefore, IT IS HEREBY ORDERED that:

Plaintiff's Motion for Summary Judgment is denied; and,

Defendant's Motion for Summary Judgment is granted.