Jean A. SIMPSON, Plaintiff,

v.

Shirley S. CHATER,[1] Commissioner, Social Security Administration, Defendant.

Civ. No. 95–6128–FR.

United States District Court, D. Oregon.

Dec. 8, 1995.

1. Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–296, 108 Stat. 1464 (1994), the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with section 206(d) of Pub.L. No. 103–296, Shirley S. Chater, Commissioner of the Social Security Administration, should be substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. No further action need be taken to continue this suit. *Id.*

Ralph Wilborn, Ralph Wilborn and Etta L. Wilborn, P.C., Eugene, Oregon, for Plaintiff.

Kristine Olson, United States Attorney, Craig J. Casey, Assistant United States Attorney, Portland, Oregon, Kathleen Unger Holt, Special Assistant United States Attorney, Seattle, Washington, for Defendant.

## OPINION

FRYE, District Judge:

The plaintiff, Jean A. Simpson, brings this action pursuant to section 205(g) of the Social Security Act (the Act), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for disability insurance benefits.

## BACKGROUND

Jean A. Simpson filed an application for a period of disability on June 15, 1993, alleging that she became disabled on October 30, 1979. The application was denied initially and upon reconsideration. After a timely request for a hearing, Simpson, represented by counsel, appeared and testified before an

Administrative Law Judge (ALJ) on June 29, 1994, as did Dr. Terry Lesh, a vocational expert.

On July 26, 1994, the ALJ issued a decision finding that Simpson was not disabled within the meaning of the Act.

The ALJ concluded, in part:

1. The claimant met the disability insured status requirements of the Act on October 30, 1979, the date the claimant stated she became unable to work, but continued to meet them only through December 31, 1984.

2. The claimant has not engaged in substantial gainful activity since October 31, 1979.

3. The medical evidence establishes that the claimant had a severe impairment during the period relevant to this adjudication, but that she did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's subjective descriptions of her symptoms and limitations during the period from October 30, 1979 through December 31, 1984, are found to be credibly supported by substantial evidence of record only in connection with activity in excess of the sedentary exertional level, pursuant to the criteria of SSR 88–13.

5. The claimant had the residual functional capacity to perform work-related activities except for work involving lifting more than 10 pounds and involving more than occasional walking or standing during the period from October 30, 1979 through December 31, 1984.

6. The claimant's past relevant work did not require the performance of work-related activities precluded by the above limitations during the period from October 30, 1979 through December 31, 1984.

7. The claimant's impairment did not prevent her from performing her past relevant work as well as other sedentary jobs existing in significant numbers in the national economy for an individual with her vocational profile during the period from October 30, 1979 through December 31, 1984.

8. The claimant was not under a "disability" as defined in the Social Security Act, at any time through December 31, 1984.

TR 26–27 (citations omitted).

The decision of the ALJ became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## FACTS

Simpson was fifty-seven years old on June 29, 1994, the date that she appeared before the ALJ. Simpson is a high school graduate, with past work experience as a branch manager of a bank, a person who prepares real estate loan applications, and a secretary. Simpson alleges that she became disabled within the meaning of the Social Security Act on October 30, 1979 because of multiple sclerosis.

In August of 1979, Simpson was admitted to a hospital by her treating physician, Dr. John A. Melson, a neurologist, with complaints of numbness and progressive clumsiness. Upon her discharge from the hospital, a diagnosis of multiple sclerosis was provisionally set forth. *See* Exhibit 15, TR 124–153.

Simpson left her job as branch manager of a bank on October 30, 1979, and she continued thereafter under the care and treatment of Dr. Melson. On January 30, 1980, Dr. Melson wrote to Simpson's disability insurance carrier as follows:

Please find enclosed appropriate medical records. I do note that in order to make Mrs. Simpson eligible for benefits, I have to declare that she is totally disabled from performing every duty pertaining to her regular occupation at present. I find this question difficult to answer because Mrs. Simpson is in possession of all her faculties and is able to use all of her extremities. I have asked her to quit work primarily to relieve herself from the emotional stress of a relatively high powered job. It is clear

that emotional stress is one of the precipitating factors in exacerbations of multiple sclerosis. Since we have no adequate treatment for these episodes when they occur, it is common practice for us to ask our patients to quit jobs if this is at all possible. Not too many years ago the local outstanding expert in multiple sclerosis, Dr. Roy Swank in Portland, used to put people at bedrest for a year. This, of course, we feel actually can be more damaging than helpful.

In short I do feel Mrs. Simpson is totally disabled, but not on the basis of the physical disability, but rather because of the seriousness of her underlying disease and the effect on that disease by stress of a relatively important managerial position.

TR 237.

On April 21, 1980, Dr. Melson wrote, in part:

There seems to be considerable confusion about the term "working", in regards to Mrs. Simpson's case.

When she came to me in August of 1979, she was seriously ill with multiple sclerosis. After her hospitalization, it was recommended that she quit her job as Branch Manager for the bank, which was much too much pressure for some one with her diagnosis.

TR 236.

On April 22, 1980, Simpson consulted with Dr. Kevin Sullivan, a neurologist from the Medford Neurological Clinic, upon a referral from Dr. Melson. Dr. Sullivan noted "[s]he was ... taken off work by Dr. Melson on October 30th," and Dr. Sullivan concluded that "[h]er history and these findings are all compatible with the diagnosis of multiple sclerosis and as such I feel that the patient should not be placed back in a stressful situation such as her previous job entailed since it is well-known that stress can exacerbate multiple sclerosis." TR 222–23.

On February 11, 1981, Dr. Melson wrote that Simpson's condition was stable, and that he did "not feel that she should return to the stressful job she had prior, but ... that she could perform in a light duty capacity in which physical exercise and mental stresses were avoided." TR 235.

On November 23, 1982, Dr. Melson wrote to Simpson's disability carrier as follows:

Since my last communication with Western Life, Mrs. Simpson's multiple sclerosis has continued to progress. She was seen here January 6, 1982 after having suffered an episode of retrobulbar neuritis involving the right eye with improvement. She then developed hearing difficulties associated with cerebellar speech, unsteadiness of tandem gait and increasing gait spasticity. These symptoms subsided, but when seen in June she was having an attack involving the right upper extremity with weakness of the hand and numbness in an ulnar distribution. When seen again in September 1982, she was developing increasing spasticity of gait and cerebellar ataxia was seen, especially in the lower extremities.

It is clear that her multiple sclerosis has continued to result in attacks and remissions and I, in short, feel that she was totally and permanently disabled from any gainful occupation at this time and in the foreseeable future. It is clear over the last 3 to 4 years that I have cared for Mr[s]. Simpson that her disease is slowly progressive. *As I have said before, though there are physical impairments, I do not feel that they are a major factor in Mrs. Simpson's case.* I feel that the course of her disorder will be only exacerbated by any attempt at rehabilitation or job retraining.

TR 232–33 (emphasis added).

On April 22, 1983, Dr. Miranda, Simpson's treating physician during a time when she was living in New Mexico, completed a report in which he stated that she was totally disabled and not a suitable candidate for rehabilitative services. TR 253.

On June 15, 1983, Simpson underwent a consultative neurological examination by Dr. Michael Pogel. Dr. Pogel reviewed Simpson's history with regard to multiple sclerosis and concluded that her disease "would make it difficult for her to perform at work on a continual basis." TR 240.

Simpson continued under the care and treatment of Dr. Melson. On June 29, 1993, Dr. Melson wrote:

> Jean Simpson has been under my care for multiple sclerosis since 1979.
>
> She has slowly progressive spastic paresis, but has fortunately remained ambulatory. I do not believe that she has the strength or coordination to be employed in any job requiring any physical effort, though her ability to sit, hear, and speak are relatively unimpaired. There is visual disturbance but it has remained stable.

TR 167.

On August 4, 1993, Dr. Melson wrote, in part:

> This patient has been under my care for multiple sclerosis. The diagnosis is undoubted and there has been slow progression over the last several years with increasing spastic paraparesis. There is optic atrophy and failing vision. She is able to sit but she can only walk a couple hundred feet. Back pain associated with paraparesis makes other activities difficult.

TR 168.

At the hearing before the ALJ on June 29, 1994, Simpson testified that she had had great difficulty climbing stairs in 1979; that her typing had been poor; and that she had had problems focusing her eyes. Simpson testified that she began to have pain with sitting in 1983 and 1984, along with bladder control problems. Simpson testified that she had also had problems with walking, seeing and manipulating her hands.

## CONTENTIONS OF THE PARTIES

Simpson contends that the ALJ failed to set forth specific, legitimate reasons based on substantial evidence in the record for disregarding the opinion of Dr. Melson, her treating physician. Simpson further contends that the ALJ failed to consider her combined impairments; failed to address her capacity to perform work activity on a regular and continuing basis; improperly rejected her testimony and the testimony of lay witnesses; and improperly concluded that she was not disabled.

The Commissioner contends that there is substantial evidence in the record to support the decision of the Commissioner; that the Commissioner applied the proper standards for the evaluation of evidence; and that the decision of the Commissioner should be affirmed.

## STANDARD OF REVIEW

The burden of proof rests upon the claimant to establish entitlement to disability benefits. To meet this burden, the claimant must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to ... last for a continuous of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for a continuous of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if his or her impairments are of such severity that the claimant is not only unable to do his or her previous work, but cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful work which exists in the national economy. *Terry v. Sullivan,* 903 F.2d 1273, 1275 (9th Cir.1990).

The Commissioner has established a five-step sequential process for evaluating and determining whether a person is disabled under the Act. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant has engaged in substantial gainful activity after the alleged onset of disability.

The second step is to determine whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If a claimant has a severe impairment or combination of impairments, then under step three of the evaluation process, the ALJ must determine whether the impairment or impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d).

If a claimant does not have an impairment that meets or equals an impairment listed under Appendix 1, then step four of the evaluation process requires the ALJ to assess the claimant's residual functional capacity to determine whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(e). If the claimant can perform his or her past relevant work, then the ALJ must find the claimant "not disabled." If the claimant cannot perform his or her past relevant work, the ALJ must proceed to the fifth step and determine whether the claimant can, nonetheless, perform work in the regional economy, in the national economy, or both.

 The findings of the Commissioner are conclusive [42 U.S.C. § 405(g)], and the decision of the Commissioner to deny benefits will be overturned only if it is not supported by substantial evidence or it is based on legal error. *Matney on behalf of Matney v. Sullivan,* 981 F.2d 1016 (9th Cir.1992). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales,* 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971), but is "less than a preponderance," *Sorenson v. Weinberger,* 514 F.2d 1112, 1119 n. 10 (9th Cir.1975). *Desrosiers v. Secretary of Health and Human Servs.,* 846 F.2d 573, 576 (9th Cir.1988).

 In evaluating the evidence, this court looks at the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Gonzalez v. Sullivan,* 914 F.2d 1197, 1200 (9th Cir.1990). The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Richardson,* 402 U.S. at 400, 91 S.Ct. at 1427; *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984).

## ANALYSIS

The issue before the court is whether there is substantial evidence in the record to support the decision of the ALJ to reject the opinion of Simpson's treating physician, Dr. Melson, and find that Simpson was not dis-abled at any time on or before December 31, 1984.

 The opinion of a treating physician is afforded greater weight because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989) (quoting *Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir.1987)). The treating physician's opinion is not necessarily conclusive as to the ultimate issue of disability; however, in order to reject the uncontroverted opinion of a claimant's physician, the ALJ must present clear and convincing reasons for doing so based upon substantial evidence in the record. *Magallanes,* 881 F.2d at 751.

Here, the ALJ stated that "[w]hile Dr. Melson does constitute a treating source, his opinion as to the issue of disability is not well-supported by clinical diagnostic evidence and it is inconsistent with substantial evidence in the case record." TR 24. The ALJ concluded that the opinion of Dr. Melson that Simpson was disabled from October 30, 1979 through December 31, 1984 is not "well-supported by clinical diagnostic evidence." *Id.* The ALJ reviewed the medical records relating to Simpson's physical capacities and found that her physical capacities as recorded did not support the opinion of Dr. Melson and all of the other consultative physicians that Simpson was unable to work during the period from October 30, 1979 through December 31, 1984.

Dr. Melson treated Simpson throughout the period October 30, 1979 to December 31, 1984. Dr. Melson stated as early as January 30, 1980 that Simpson should quit work because of her medical condition. Dr. Melson repeatedly opined during the period October 30, 1979 through December 31, 1984 and into the present that Simpson was unable to perform any gainful employment because of multiple sclerosis. Dr. Melson explained that his opinion was based on the fact that multiple sclerosis was a progressive disease, and that the stress of working would exacerbate the progression of the disease. Dr. Melson repeatedly documented Simpson's extensive and recurring neurological and visual problems.

During the period from October 30, 1979 through December 31, 1984, several other physicians were consulted and wrote reports. Each of these reports support Dr. Melson's perception of Simpson's reported problems; support Dr. Melson's diagnosis of multiple sclerosis; and are in accordance with Dr. Melson's opinion that Simpson was not able to engage in substantial gainful employment because of the disease, multiple sclerosis.

■ There is evidence in the record to support the opinion of Dr. Melson that Simpson was unable to perform gainful employment because of multiple sclerosis during the period October 30, 1979 through December 31, 1984. The ALJ's independent assessment of the medical evidence cannot provide substantial evidence for rejecting the uniform opinion of all of the physicians who treated Simpson during this period that she was prevented from performing work activity on a regular and continuing basis during the period October 30, 1979 through December 31, 1984.

### CONCLUSION

Based upon the record as a whole, the decision of the Commissioner that Simpson was "not under a 'disability' as defined in the Social Security Act, at any time through December 31, 1984" (TR 27) is not supported by substantial evidence in the record. The decision of the Commissioner is reversed. This case is remanded to the Commissioner for further proceedings.

### JUDGMENT

Based on the record,

The decision of the Commissioner is hereby REVERSED, and this case is REMANDED to the Commissioner for further proceedings.