**Mary MAIER, Plaintiff,**

v.

**John J. CALLAHAN,[1] Acting Commissioner, Social Security Administration, Defendant.**

**Civ. No. 96–1140–FR.**

United States District Court,
D. Oregon.

April 8, 1997.

---

1. President Clinton appointed John J. Callahan to serve as Acting Commissioner of the Social Security Administration, effective March 1, 1997, to succeed Shirley S. Chater. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, John J. Callahan is substituted, therefore, for Shirley S. Chater as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

David B. Lowry, Portland, OR, for Plaintiff.

Kristine Olson, United States Attorney, Craig J. Casey, Assistant United States Attorney, Portland, OR, Ben A. Porter, Special Assistant United States Attorney, Social Security Administration, Seattle, WA, for Defendant.

## OPINION

FRYE, District Judge.

The plaintiff, Mary Maier, brings this action pursuant to section 205(g) of the Social Security Act (the Act), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the decision of the Commissioner denying

her application for Supplemental Security Income benefits.

## BACKGROUND

Mary Maier filed her application for Supplemental Security Income benefits on October 18, 1993. The application was denied initially and upon reconsideration. After a timely request for a hearing, Maier, represented by counsel, appeared and testified before an Administrative Law Judge (ALJ) on March 13, 1995, as did Byron McNaught, a vocational expert.

On June 13, 1995, the ALJ issued a decision finding that Maier was not disabled within the meaning of the Act. On July 12, 1996, the Appeals Council declined to review the decision of the ALJ.

## UNDISPUTED FACTS

Mary Maier was born on August 17, 1953 and was 41 years old at the time of her hearing before an ALJ. Maier has an eleventh grade education. She has also completed the studies necessary for a General Education Degree (GED). Maier has past relevant work experience as a house cleaner, a bartender, a nurse's assistant, and an office worker.

Maier alleges that she became disabled in April of 1993 because of an occipital lobe infarct "with residual vision problems, daily headache[s]; concentration/comprehension problems; also, insomnia/fatigue/episodes of depression; some social functioning problems; low tolerance for stress." TR 111.

The medical records indicate that Maier was given a physical examination in September of 1992 and was noted by the examiner to be a "[f]airly healthy lady who needs more primary care." TR 140. Maier was receiving treatment at that time from the Council on Alcohol and Drugs in Clark County, Washington, but she has subsequently become drug-free.

In April of 1993, Maier suffered a stroke. This stroke caused a loss of visual acuity on the right side of her visual field. The stroke left her with a "cognitive disorder" not otherwise specified.

On April 14, 1993, Dr. J. Bruce Bell found that Maier was disabled as a result of the stroke on April 5, 1993, and that her "disability will last at least three months if not longer." TR 201. In June of 1993, Dr. Bell noted Maier's reported visual problems resulting in an inability to read, and reported that "[s]he is probably not going to be able to work." TR 200.

In July of 1993, Dr. Bell wrote that Maier was "starting to be able to read somewhat." TR 197. In October of 1993, Dr. Bell reported that Maier was continuing to improve; however, in January of 1994, Dr. Bell wrote that "[p]atient still has significant problems with vision. She sees only out of the right half of her eye." TR 195.

In November of 1993, Maier underwent an ophthalmoscopic examination performed by Dr. Don Behrends. Dr. Behrends noted that there was a "loss of a portion of the superior field in [Maier's] right eye," TR 187, but that Maier's unaided and aided vision was 20/20 or better in both eyes. Dr. Behrends also noted that "[t]here should be a little loss of visual ability or capacity from this field loss." *Id.*

In July of 1994, Dr. Bell completed two physical evaluation forms indicating that Maier was capable of performing sedentary work. TR 215, TR 217.

In February of 1994, Dr. Jeffrey Meyerhoff performed a psychiatric examination of Maier at the request of Disability Determination Services. TR 190–193. This examination showed a slight impairment in Maier's ability to understand, to remember, and to carry out simple one or two-step job instructions. Dr. Meyerhoff noted a mild decrease in Maier's ability to concentrate and stated that her prognosis for significant improvement is positive with time and/or treatment.

In April of 1995, Dr. Linda Conaway performed a psychological evaluation of Maier. Dr. Conaway determined that Maier suffered from a mood disorder caused by her stroke with a major depressive like episode, cognitive disorder, and cannabis (marijuana) abuse by history. Dr. Conaway wrote that Maier appeared "at this point to be significantly depressed with some paranoid features fol-

lowing a stroke approximately 2 years ago. She also is very anxious and uncomfortable around people. In addition she does appear to have some memory difficulties and functions below average on standardized testing." TR 228.

At the hearing, Maier testified that her daily activities are limited to cleaning her home and cooking; that she does not drive a car; that she requires her boyfriend to accompany her to the grocery store because she gets confused; and that she takes Toradol for headaches and Zoloft for depression.

At the hearing, the ALJ posed a hypothetical statement of facts to the vocational expert as follows:

> But let me start by saying—by doing this—Dr. Bell feels as though consistently that she's capable of only sedentary work. I'm not clear as to why that is because I'm having a lot of trouble reading some of his handwriting, even though I've seen many reports from him. So let's assume that we have a—I guess I have to change our—her age. Let's say 41 years old with a GED and the past work history described in this record. It's limited to sedentary work, and I'll start out by saying she has, according to Dr. Maier, in Exhibit 20, normal vision as far as visual acuity in both eyes but has a limitation in the peripheral vision of the right eye to the point where it looks like—well, let's just say she lacks peripheral vision in the right eye. And let me add to that that she has the inability to read because of the residuals of the stroke. Although she may be able to see the letters, she's not able to comprehend except for simple things such as reading labels on food products.

TR 60–61. Based upon this hypothetical statement of facts, the vocational expert testified that a person so limited would be able to perform the jobs of hand packer, small parts assembler, dressing room attendant, grinder operator, and small products assembler. The vocational expert stated that if Maier was further limited to no interaction with the public, then the job of dressing room attendant would be excluded. The vocational expert testified that Maier would still be able to perform the other jobs identi-

fied as long as any headaches were less than severe in range and she could concentrate at least at a relatively low level.

The ALJ concluded that Maier was unable to perform her past relevant work as a caregiver or bartender; that her residual functional capacity to perform the full range of sedentary work is reduced by her lack of peripheral vision, inability to handle moderate stress, and inability to work closely with others; but that she can perform work as a hand packager, assembly worker, or grinder operator.

## CONTENTIONS OF THE PARTIES

Maier contends that 1) the ALJ erred by failing to find that the mental impairment from which she suffers satisfied the criteria of the listings under Appendix 1; 2) the ALJ erred by rejecting her testimony that she was unable to work as inconsistent with medical opinion and contrary to her daily activities; and 3) the ALJ failed to properly evaluate her residual functional capacity when he used an inadequate hypothetical question and he identified jobs unsuitable for her.

The Commissioner contends that there is substantial evidence in the record to support the decision of the Commissioner; that the Commissioner applied the proper standards for the evaluation of evidence; and that the decision of the Commissioner should be affirmed.

## STANDARD OF REVIEW

The burden of proof rests upon the claimant to establish entitlement to disability benefits. To meet this burden, the claimant must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to ... last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The Act also pro-

vides that a claimant shall be determined to be under a disability only if his or her impairments are of such severity that the claimant is not only unable to do his or her previous work, but cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful work which exists in the national economy. *Terry v. Sullivan,* 903 F.2d 1273, 1275 (9th Cir.1990).

The findings of the Commissioner are conclusive [42 U.S.C. § 405(g) ], and the decision of the Commissioner to deny benefits will be overturned only if it is not supported by substantial evidence or it is based on legal error. *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016 (9th Cir.1992). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), but is "less than a preponderance," *Sorenson v. Weinberger,* 514 F.2d 1112, 1119 n. 10 (9th Cir.1975). *Desrosiers v. Secretary of Health and Human Servs.,* 846 F.2d 573, 576 (9th Cir.1988).

In evaluating the evidence, this court looks at the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Gonzalez v. Sullivan,* 914 F.2d 1197, 1200 (9th Cir.1990). The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Richardson,* 402 U.S. at 400, 91 S.Ct. at 1426; *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984).

## ANALYSIS

*Mental Impairment*

■ Maier contends that her mental disorder renders her disabled under Sections 12.02 and 12.04 of Appendix 1, Subpart P, Regulations No. 4. Maier further contends that even if the court determines that she does not meet these listings, she must be found disabled because her condition is equal to a listed impairment.

With respect to the listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.02 *Organic Mental Disorder,* there is no evidence in this record that Maier has been diagnosed with such a disorder or had symptoms similar to such a diagnosis.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.04 states as follows:

12.04 *Affective Disorders:* Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings or guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractability; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

The results of the psychiatric evaluations performed by Dr. Meyerhoff (TR 190–193) and Dr. Conaway (TR 223–228) do not support the conclusion that Maier's state of mental health meets or equals this listing. Dr. Meyerhoff diagnosed Maier with alcohol and polysubstance abuse, which is in remission, and a history of adjustment disorder with depressed mood, not currently active. Dr. Meyerhoff described Maier's functional ability on February 5, 1994 as follows:

Her ability to relate and interact with supervisors, coworkers, and the public would appear to be mostly intact, although I suspect that her physical complaints as well as her mild decrease in concentration could affect this to some degree.

Her ability to understand, remember, and carry out simple one- or two-step job instructions would appear to be slightly impaired, based on her mental status exam, where she was only able to get 1/3 objects spontaneously in recall, and had some other difficulties with items she previously knew.

Her ability to withstand the stress and pressures associated with day-to-day work

activity would appear to be slightly limited as well, given her physical ailment.

Prognosis for significant improvement with time and/or treatment is positive, as I suspect she should be able to learn to live with the above-reported physical impairments, and as I don't suspect other overt psychiatric illnesses, this would not necessarily come into play. . . .

TR 192–193.

Dr. Conaway concluded on April 20, 1995 that Maier was "significantly depressed with some paranoid features," "very anxious and uncomfortable around people," and "does appear to have some memory difficulties." TR 228. This court has carefully reviewed Dr. Conaway's report and concludes that this report does not support a conclusion that Maier's mental impairments meet the listings of Section 12.04 or any other section of Appendix 1. Dr. Conaway's conclusions are based significantly on Maier's subjective statements and are not confirmed by any other evidence in the record.

*Claimant's Testimony*

The ALJ stated:

I have carefully considered [Maier's] testimony, the objective evidence and the opinion of her primary treating physician. I find her testimony regarding her inability to work is not credible. Her testimony is inconsistent with the medical findings, the scope of her daily activities and the opinion of her primary treating physician. The medical evidence shows th[at] Ms. Maier's visual limitation is restricted to the right side of her visual field. Her visual impairment does not preclude the performance of all work related tasks. Her organic disorder causes some limitations related to memory, however she can perform simple tasks. Neither her cognitive disorder nor her mood disorder prevent her from performing adequately on a day to day basis. By her own admission, she cleans her house "well", does the dishes, vacuums, does the laundry, reads and watches television. She manages her own money. Her treating physician indicated she was unable to work in June 1993, but he projected this would last less than 12 full and continuous months (Exhibit 27). Her allegations

of continuing disability is inconsistent with the medical opinion.

Ms. Maier's motivation to engage in substantial gainful work is questionable in light of her sporadic work history. Her longest employment was for approximately 1 to 2 years as an office worker in the 1970's.

TR 24.

■ Maier contends that the ALJ ignored her consistent reports of headache pain which would cause fatigue and require rest, especially when coupled with medically recognized depression and vision problems. Maier contends that the ALJ failed to state clear and convincing reasons for his conclusion regarding her credibility.

The ALJ was entitled to evaluate Maier's testimony, to note inconsistencies between her statements and the evidence in the medical record, and to note inconsistencies within her own testimony. The ALJ set forth valid reasons for rejecting Maier's testimony that she was and still is unable to work.

*Residual Functional Capacity*

■ Maier contends that the conclusion of the ALJ that she is capable of performing the jobs of hand packager, grinder operator, and product assembly worker is flawed because 1) the hypothetical question presented to the vocational expert failed to contain all of her impairments; and 2) the jobs identified as suitable for her are not suitable in light of her impairments.

At the hearing, the ALJ told the vocational expert to assume as true a hypothetical set of facts as follows:

> Dr. Bell feels as though consistently that [Maier's] capable of only sedentary work.... Let's say 41 years old with a GED and the past work history described in this record. It's limited to sedentary work, and I'll start out by saying she has, according to Dr. Maier, in Exhibit 20, normal vision as far as visual acuity in both eyes but has a limitation in the peripheral vision of the right eye to the point where it looks like—well, let's just say she lacks peripheral vision in the right eye. And let me add to that that she has the inability to read because of the residuals of the stroke.

Although she may be able to see the letters, she's not able to comprehend except for simple things such as reading labels on food products.

TR 60–61. Based upon this hypothetical set of facts, the vocational expert testified that a person so limited would be able to perform the jobs of hand packer, small parts assembler, dressing room attendant, grinder operator, and small products assembler. If Maier was further limited to no interaction with the public, then the vocational expert testified that the job of dressing room attendant would be excluded. The vocational expert testified that Maier would still be able to perform the other jobs that he had identified as long as Maier's headaches were less than severe in range and she could concentrate at least at a relatively low level.

The court finds that the hypothetical question posed by the vocational expert contained all of the limitations and restrictions supported by substantial evidence in this record. The ALJ properly relied upon the testimony of the vocational expert in identifying specific jobs existing in significant numbers in the economy which Maier could perform.

## CONCLUSION

After carefully weighing the evidence, the court finds that there is substantial evidence to support the decision of the Commissioner. The decision of the Commissioner is affirmed.